UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-165-RJC-DCK

| | |
|---|---|
| CHRISTOPHER BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **ORDER** |
| PRIME STAR GROUP, INC., a Nevada Corporation; ROGER MOHLMAN; and GARY CHERNAY; | ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Default Judgment. (Doc. No. 20).

## I. BACKGROUND

### A. Procedural Background

Dr. Christopher Brown, ("Plaintiff") filed a Complaint, (Doc. No. 1), against Prime Star Group, Inc., ("PSGI"), Roger Mohlman ("Mohlman"), Gary Chernay ("Chernay"), and Pacific Stock Transfer Company ("PSTC") on March 12, 2012. Chernay was served with a summons and Complaint on April 2, 2012, see (Doc. No. 6), with an answer or response due April 23, 2012. FED. R. CIV. P. 12(a)(1)(A)(i). Mohlman was served on April 16, 2012, see (Doc. No. 7), with an answer or response due May 7, 2012. FED. R. CIV. P. 12(a)(1)(A)(i). Defendants Chernay and Mohlman failed to respond in a timely manner. On May 21, 2012, Plaintiff filed a motion for default as to Defendants Chernay and Mohlman, (Doc. No. 8), which was entered by the Clerk of Court on May 23, 2012. On August 20, 2012, Plaintiff filed a Motion for Default Judgment as to Defendants Chernay and Mohlman. (Doc. No. 10). However, because PSGI and

PSTC had not yet been served, the Court denied the Motion for Default Judgment without prejudice under Federal Rule of Civil Procedure 54(b). (Doc. No. 11). Plaintiff voluntarily dismissed PSTC on December 5, 2012. (Doc. No. 14).

Plaintiff served PSGI with a summons and Complaint on December 4, 2012, (Doc. No. 13), after being ordered by this Court to do so, see (Doc. No. 12), and PSGI's answer or response was due on December 26, 2012. FED. R. CIV. P. 12(a)(1)(A)(i). PSGI failed to timely respond and Plaintiff filed a Motion for Default against PSGI on January 24, 2013, (Doc. No. 15), which the Clerk entered on February 4, 2013, (Doc. No. 16). Since that time, Plaintiff, who is represented by counsel, took no action in this case until the Court ordered him to file a Motion for Default Judgment on April 29, 2013. See (Doc. No. 17: Order). Plaintiff filed a Motion for Default Judgment, (Doc. No. 18), on May 8, 2013, and an Amended Motion for Default Judgment, (Doc. No. 19), on May 9, 2013. In support of his Motions, Plaintiff offered no accounting or evidence with which the Court could determine damages. Instead, the entire text of Plaintiff's Amended Motion was as follows:

> Plaintiff CHRISTOPHER BROWN requests that entry of judgment by default be entered against Defendants PRIME STAR GROUP, INC., GARY CHERNAY and ROGER MOHLMAN pursuant to Federal Rule of Civil Procedure 55(b). In support of this request, Plaintiff relies upon the record in this case and the affidavit submitted herein.

(Doc. No. 19). Because Plaintiff failed to attach a memorandum in support of his Amended Motion in violation of Local Rule 7.1(C), the Court ordered Plaintiff to file a memorandum on May 14, 2013. Hearing no response, the Court again ordered Plaintiff to file a memorandum, this time setting a deadline of May 30, 2013. On May 30, 2013, Plaintiff filed a second Motion for Default Judgment against Defendants PSGI, Chernay, and Mohlman, (Doc. No. 20), this time attaching a three-page memorandum.

2

B.    Factual Background

Because of their default in this matter, (Doc. Nos. 9; 16), Defendants are deemed to have admitted those well-pleaded facts alleged in the Complaint that are material to Plaintiff's claims against them. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). Accordingly, the factual summary below is consistent with that alleged in Plaintiff's Complaint. (Doc. No. 1).

Plaintiff alleges in his complaint that he is an oral and maxillofacial surgeon who works in Hickory and Morganton, North Carolina. (Doc. No. 1 at 3). Plaintiff states that he also has experience with investment matters in food and medical companies and firms. (Id.). Due to his physician and investment experience, Plaintiff alleges that he was approached by Mohlman to provide consulting services for his company, PSGI. (Id.). Mohlman was the CEO of now crippled PSGI and Chernay was PSGI's in-house counsel.[1] (Id.).

Plaintiff alleges that around June 2011, he executed a consulting agreement with PSGI. (Id. at 4). Plaintiff also agreed to loan PSGI $15,000 secured by a promissory note. (Id.). In exchange, PSGI agreed: (1) to pay Plaintiff for his consulting services by "issuing him 2,500,000 shares of 144c stock and 2,500,000 non-dilatable [sic] warrants;" (2) to pay all of Plaintiff's "out of pocket expenses;" and (3) to repay Plaintiff the "$15,000 loan he lent to PSGI, plus a simple interest rate of 10% percent per annum." (Id.). The loan was to be repaid no later than January

---

[1] In March 2012, the SEC revoked PSGI's securities issuing license and charged PSGI with a multitude of fraud and Securities and Exchange Act violations. According to the SEC's complaint, PSGI was allegedly running a "pump and dump" scheme where they manipulated investors into buying shares of stock that were essentially valueless through the use of false press releases and SEC filings. See http://www.sec.gov/litigation/litreleases/2012/lr22278.htm (last visited June 25, 2013).

30, 2012.  (Id.).  The promissory note provided Plaintiff with the option to convert the indebtedness owed to him into non-dilatable warrants for common stock in PSGI.  (Id.).

Shortly after the consulting agreement and promissory note were executed, Plaintiff began contacting PSGI, Mohlman, and Chernay in an attempt to acquire information about PSGI's finances in an effort to make an informed decision regarding his securities options.  (Id. at 4-5).  Plaintiff states that his requests for information were either ignored or dismissed by PSGI and Chernay.  (Id. at 5).

Plaintiff subsequently learned that PSGI was under investigation by the Securities and Exchange Commission for failure to make available adequate information about PSGI and for alleged fraudulent activities.  (Id.).  Plaintiff then demanded "the issuance of his stock and/or warrants." (Id.).  PSGI and Chernay initially demanded paperwork from Plaintiff, which he provided, yet Chernay later claimed he never received it and denied Plaintiff's request for the issuance of stock and/or warrants.  (Id.).  According to Plaintiff, Chernay eventually conceded that Plaintiff was entitled to the stock and/or warrants and directed former defendant Pacific Stock Transfer Company to issue Plaintiff the promised securities.  (Id.).  Despite Chernay's alleged directive, Plaintiff never received his securities.  (Id.).

Plaintiff lists six causes of action against Defendants: (1) Violation of § 17(a) of the Securities Act; (2) Violation of § 10(b) and Rule 10-b(5) of the Exchange Act; (3) Unfair and Deceptive Trade Practices, N.C. GEN. STAT. § 75-1.1, et seq; (4) Breach of Express Contract; (5) Common Law Fraud and Aiding and Abetting Fraud; and (6) Unjust Enrichment.  Plaintiff alleges that all causes of action fall under jurisdiction of this Court and damages satisfy the $75,000 threshold for diversity jurisdiction.  (Doc. No. 1 at 2-3).

Plaintiff  requests that judgment be entered against Defendants Chernay, Mohlman and

PSGI, jointly and severally, as follows: (1) $15,000 which was loaned by Plaintiff and not repaid; (2) interest accruing on the unpaid $15,000 at the rate of 10% per annum beginning on June 21, 2011; (3) value of 2,500,000 shares of PSGI stock on January 30, 2012, at $0.10 per share, equaling $250,000; (4) treble damages, recoverable pursuant to N.C. Gen. Stat. § 75-1.1, totaling $765,000; and (5) reasonable attorney's fees, recoverable pursuant to N.C. Gen. Stat. § 75-1.1, totaling $76,500. (Doc. No. 20-1 at 3). Defendants have not responded and the time for doing so has expired. LCvR 7.1(E).

## II. STANDARD OF REVIEW

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the Complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also FED. R. CIV.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F. 3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct.7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the Complaint support the relief

sought. See Ryan, 253 F. 3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a "'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F. 3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780–81; Gaines, 635 F. Supp. 2d at 416–17). The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. (Id.) (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., No. RDB–08–2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul.8, 2010).

## III. DISCUSSION

### A. Breach of the $15,000 Loan Agreement

The promissory note ("Note" or "Loan Agreement") signed by PSGI and Plaintiff which governed the $15,000 loan and interest accrual arrangement contained a Nevada choice of law provision. See (Doc. No. 1-2 at 7). "Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). "Failure to perform one's obligations within the express terms of an agreement constitutes a literal breach of contract." Id. at 923.

Plaintiff filed a copy of the Note, which appears to be a valid contract, and thus satisfies the first breach of contract element. (Doc. No. 1-2). The second element of a breach of contract, breach by the defendant, is satisfied by Defendant's failure to repay the $15,000, plus 10% accrued interest. (Doc. No. 1 at 9). Plaintiff suffered damages as a result of the breach in the amount of $15,000, plus interest. (Id.). Finding that Plaintiff sufficiently alleged a breach of the $15,000 loan agreement, the Court awards Plaintiff $15,000, plus interest accrued at the rate of 10% per annum from June 21, 2011.

### B. Other Causes of Action Stemming from the $15,000 Loan Agreement

Plaintiff also alleges the following causes of action stemming from the breach of the $15,000 Loan Agreement: (1) Violation of § 17(a) of the Securities Act; (2) Violation of § 10(b) and Rule 10-b(5) of the Exchange Act; (3) Unfair and Deceptive Trade Practices; (4) Common Law Fraud and Aiding and Abetting Fraud; and (5) Unjust Enrichment. However, under Nevada law, a "plaintiff can recover only once for a single injury even if the plaintiff asserts multiple legal theories. Thus, satisfaction of the Plaintiff's damages for an injury bars further recovery for

that injury." Elyousef v. O'Reilly & Ferrario, LLC, 245 P.3d 547, 549 (Nev. 2010). Since Plaintiff has been awarded compensation for breach of the $15,000 Loan Agreement, he cannot recover for additional causes of action stemming from the same injury.

C.      Breach of the $250,000 Consulting Agreement

Plaintiff alleges that he and PSGI executed a consulting agreement ("Consulting Agreement") whereby PSGI would pay Plaintiff for one year of consulting services by issuing him 2,500,000 shares of 144c stock, valued at $250,000. However, Plaintiff does not sufficiently allege facts supporting a breach of the Consulting Agreement. A "defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Plaintiff does not allege that he actually performed any consulting services for PSGI. "The general rule is that promises each of which forms the whole consideration for the other will not be held to be independent of one another; and a failure of one party to perform on his part will exonerate the other from liability to perform." Edgerton v. Taylor, 115 S.E. 156, 159 (N.C. 1922). Therefore, Plaintiff will not be awarded damages for breach of the Consulting Agreement.

D.      Other Causes of Action Stemming from the $250,000 Consulting Agreement

Plaintiff also alleges the following causes of action stemming from the breach of the $250,000 Consulting Agreement: (1) Violation of § 17(a) of the Securities Act; (2) Violation of § 10(b) and Rule 10-b(5) of the Exchange Act; (3) Unfair and Deceptive Trade Practices; (4) Common Law Fraud and Aiding and Abetting Fraud; and (5) Unjust Enrichment.

### 1. Unjust Enrichment

"Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Primerica Life Ins. Co. v. James Massengill & Sons Const. Co., 712 S.E. 2d 670, 677 (N.C. App 2011). Here, Plaintiff failed to sufficiently plead that any measurable benefit was conferred upon PSGI and thus the first element of his unjust enrichment claim is not satisfied.

### 2. Common Law Fraud and Aiding and Abetting Fraud

The following essential elements of actionable fraud are well established: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injury party." Ragsdale v. Kennedy, 209 S.E. 2d 494, 500 (N.C. 1974) (citations omitted). Here, Plaintiff did not sufficiently allege any damage stemming from Defendants' failure to pay him $250,000 because he did not perform any consulting services pursuant to the Consulting Agreement.

### 3. Unfair and Deceptive Trade Practices

In order to establish a violation of N.C. Gen. Stat. § 75-1.1, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. N. Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000); see also N.C. GEN. STAT. § 75-1.1(a). Again, Plaintiff fails to allege any injury stemming from the Consulting Agreement. Therefore, this claim fails.

4. <u>Violation of § 17(a) of the Securities Act</u>

This cause of action can be dispensed with without looking to the elements required to prove a violation. Fourth Circuit case law clearly states that "section 17(a) (of the Securities Act) implies no private cause of action." <u>Newcome v. Esrey</u>, 862 F. 2d 1099, 1101 (4th Cir. 1988). Therefore, this cause of action is unavailable to Plaintiff as a means of recovery.

5. <u>Violation of § 10(b) and 10(b)-5 of the Exchange Act</u>

"To state a claim pursuant to Section 10(b) and Rule 10(b)-5, a plaintiff must allege that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." 15 U.S.C.A. § 78j (West). Plaintiff fails to satisfy the injury requirement of this cause of action. Since Plaintiff never sufficiently pleaded that any consulting services were provided, Defendants' failure to pay him $250,000 does not constitute an injury to Plaintiff.

E. <u>Attorney's Fees</u>

Plaintiff's counsel is entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1. However, the Court finds no affidavit within the docket report detailing the labor Plaintiff's counsel has expended on this case. Such affidavit is required to calculate the reasonableness of the attorney's fees award. The Court thus directs Plaintiff's counsel to submit an affidavit to assist the Court in determining the attorney's fees award.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Second Motion for Default Judgment (Doc. No. 20), is **GRANTED**;

2. Judgment is entered in favor of Plaintiff and against Defendants, jointly and

severally, in the amount of $15,000, plus interest accrued at the rate of 10% per annum from June 21, 2011 to the date of entry of this Order;

3. Interest from the date of entry of this judgment shall accrue at the legal rate, pursuant to 28 U.S.C. § 1961;

4. Pursuant to Federal Rule of Civil Procedure 54(d), Plaintiff is awarded its costs in this action;

5. Reasonable attorney's fees are awarded pursuant to N.C. Gen. Stat. § 75-16.1. Within fourteen (14) days of entry of this Order, Plaintiff's counsel is directed to submit an affidavit indicating the number of hours worked on this case, and the average hourly rate charged; and

6. The Clerk of Court is directed to close this case.

Signed: July 9, 2013

Robert J. Conrad, Jr.
United States District Judge